## LEON BELL v. COMMISSIONER
## OF CORRECTION
## (SC 20223)

Robinson, C. J., and Palmer, D'Auria, Kahn,
Ecker and Vertefeuille, Js.*

*Syllabus*

In accordance with this court's decision in *State* v. *Salamon* (287 Conn.
509), when a criminal defendant is charged with kidnapping in conjunc-
tion with another underlying crime, such as robbery, the jury must be
instructed that the defendant cannot be convicted of kidnapping if the
restraint imposed on the victim was merely incidental to the commission
of that underlying crime.

The petitioner, who had been convicted of multiple counts of kidnapping
in the first degree and robbery in the first degree, among other crimes,
sought a writ of habeas corpus, claiming a violation of his due process
rights to a fair trial under the federal and state constitutions. His convic-
tions stemmed from robberies that he had committed at two separate
restaurants. While committing one of the robberies, the petitioner forced

* The listing of justices reflects their seniority status on this court as of
the date of oral argument.

Bell *v.* Commissioner of Correction

the sole, remaining employee to open the restaurant's safe, ordered her
to sit in a chair facing in the opposite direction of the safe, and, after
approximately one or two minutes, ordered her to enter the restaurant's
walk-in refrigerator and to remain inside of it for fifteen minutes. While
committing the other robbery, the petitioner ordered the restaurant
employee to enter the restaurant's walk-in refrigerator immediately after
she had opened the safe for him. The petitioner confessed to both
robberies and indicated that he had removed money from the restau-
rants' safes while the victims were in the walk-in refrigerators. Although
unarmed during the robberies, the petitioner had positioned a wooden
coat hanger under his jacket to make it appear as if he were brandishing
a firearm. Following this court's determination that *Salamon*, which
had been decided after the petitioner's trial, applied retroactively in
habeas actions, the petitioner challenged his kidnapping convictions on
the ground that the instructions at his criminal trial were not in accor-
dance with the requirements set forth in *Salamon*. The habeas court
denied the petition, concluding that the respondent, the Commissioner
of Correction, had demonstrated that the absence of a *Salamon* instruc-
tion was harmless error. On the granting of certification, the petitioner
appealed to the Appellate Court, which reversed the habeas court's
judgment. The Appellate Court applied the harmless error standard set
forth in *Neder* v. *United States* (527 U.S. 1) in determining that the
absence of a *Salamon* instruction at the petitioner's criminal trial was not
harmless beyond a reasonable doubt. The respondent, on the granting
of certification, appealed to this court. *Held* that it was unclear whether
the absence of a *Salamon* instruction at the petitioner's criminal trial
was harmless error, as this court could not conclude that a properly
instructed jury would have found the defendant guilty of the kidnapping
charges beyond a reasonable doubt, and, accordingly, the petitioner was
entitled to a new trial on those charges: in the companion case of *Banks*
v. *Commissioner of Correction* (339 Conn. 1), this court clarified that,
on collateral review, the harmlessness of a trial court's failure to give
a *Salamon* instruction is to be assessed in accordance with the standard
set forth in *Brecht* v. *Abrahamson* (507 U.S. 619), which requires a new
trial only if the instructional error had a substantial and injurious effect
or influence in determining the jury's verdict, rather than in accordance
with the standard set forth in *Neder*; moreover, in circumstances such
as those that were at issue in *Banks*, in which it was clear that the
petitioner forcibly moved and restrained his victims, after having taken
their property, for the apparent purpose of escaping from the crime
scene undetected and unhindered, it was reasonable for the habeas court
to conclude that the *Salamon* error was harmless, as the asportation
and restraint of the victims in *Banks* bore criminal significance indepen-
dent of the underlying robberies; in the present case, however, unlike
in *Banks*, it was not clear whether the petitioner forcibly moved and
restrained his victims after having taken possession of their property,

Bell *v.* Commissioner of Correction

as the jury reasonably could have found that the petitioner forced the restaurant employees into the walk-in refrigerators not to facilitate his escape but, rather, to incapacitate them while he completed the robberies and to maintain the illusion that he was armed, as he would have needed to remover the coat hanger from under his jacket in order to use both of his hands to empty the safes.

(*Two justices concurring separately in two opinions*)

Argued December 16, 2019—officially released May 12, 2021**

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Oliver, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to the Appellate Court, *DiPentima, C. J.*, and *Sheldon, J.*, with *Lavine, J.*, dissenting, which reversed the judgment of the habeas court and remanded the case to that court with direction to grant the petition, and the respondent, on the granting of certification, appealed to this court. *Affirmed.*

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, former state's attorney, and *Tamara Grosso*, assistant state's attorney, for the appellant (respondent).

*David B. Rozwaski*, assigned counsel, for the appellee (petitioner).

*Opinion*

PALMER, J. This appeal and the companion case we also decide today; see *Banks* v. *Commissioner of Correction*, 339 Conn. 1,   A.3d   (2021); invite us to further clarify our decision in *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008), in which we overruled our long-standing interpretation of Connecticut's kidnapping statutes and held that, when a criminal defendant is charged with kidnapping in conjunction with

** May 12, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Bell *v.* Commissioner of Correction

another underlying crime, such as rape or assault, the defendant is entitled to a jury instruction that he cannot be convicted of kidnapping if the restraint imposed on the victim was merely incidental or necessary to the underlying crime. See id., 542–50. In *Banks*, we answered two questions left open by *Salamon* and its progeny. First, we clarified that, in a habeas action, the harmlessness of a *Salamon* error is to be assessed according to the legal standard that the United States Supreme Court articulated in *Brecht* v. *Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993), which mandates a new trial if the instructional error "had [a] substantial and injurious effect or influence in determining the jury's verdict"; (internal quotation marks omitted) id., 623; rather than the standard set forth in *Neder* v. *United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999), which requires a new trial unless it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the [instructional] error . . . ." Id., 18; see *Banks* v. *Commissioner of Correction*, supra, 4. Second, when, as in *Banks*, it is clear that a perpetrator moved and restrained his victims, after having robbed them, for the purpose of escaping unobstructed and undetected from the crime scene, a habeas court may conclude as a matter of law that the lack of a *Salamon* instruction was harmless error. See *Banks* v. *Commissioner of Correction*, supra, 44–45. As we explain more fully hereinafter, in the present case, unlike in *Banks*; see id., 45; it is not clear that the petitioner, Leon Bell, forcibly moved and restrained his victims *after* having taken property in their possession. For that reason, we can have no fair assurance that the *Salamon* error did not have a substantial and injurious effect or influence in determining the jury's verdict. Put differently, following a thorough, de novo review of the record, we cannot be confident that a properly instructed jury would have

found the defendant guilty beyond a reasonable doubt. Accordingly, we affirm the judgment of the Appellate Court, which reversed the judgment of the habeas court denying Bell's habeas petition and ordered a new trial on the kidnapping charges. *Bell* v. *Commissioner of Correction*, 184 Conn. App. 150, 173, 194 A.3d 809 (2018).

I

In 2001, the petitioner was arrested and charged in connection with the robberies of two Friendly's restaurants, the first in Manchester and the second in Glastonbury. Id., 153. The two cases were consolidated and tried jointly before a jury in 2002. See id. The facts that the jury reasonably could have found with respect to both robberies are set forth in the opinion of the Appellate Court.

"At approximately 1 a.m. on April 12, 2001, Cheryl Royer was the last employee to leave the Friendly's restaurant in Manchester. As she was exiting the restaurant, the petitioner approached her, stated that he had a gun, and ordered her to 'get back inside' and to 'give him the money.' Once Royer informed the petitioner that she did not have any money, the petitioner told her 'to get the money from the safe.' The petitioner and Royer entered the restaurant together and walked to the manager's office, the location of the safe. Royer then opened the safe at the petitioner's direction and 'was told to sit in the chair in the corner and turn away.' After approximately '[one] minute' or '[a] matter of minutes' [during which Royer was] sitting in the chair, the petitioner told Royer 'to go into the walk-in refrigerator.' The walk-in refrigerator was approximately fifteen feet down the hall from the manager's office, and, after the petitioner finished looting the safe, he ordered Royer to proceed into the refrigerator. Once she entered the refrigerator, and after the refrigerator door shut

Bell *v.* Commissioner of Correction

behind her, the petitioner told her 'to stay in there for fifteen minutes.' Royer smoked part of a cigarette, and, after a few minutes, she left the refrigerator and ran into the office to call the police. The petitioner was not in the restaurant when Royer exited the refrigerator.

"Two days later, on April 14, 2001, at approximately 6 a.m., Tricia Smith was the first employee to arrive for the opening shift at the Friendly's restaurant in Glastonbury. As she entered the restaurant, the petitioner approached her from behind and 'told [her] to turn off the alarm.' Smith testified: 'He told me—he asked me where the safe was, I told him it was in the back dish room, [and] he told me to go back and open it.' Smith did not see a gun, but the petitioner had something underneath his jacket that looked like one. Smith led the petitioner to the safe, and, after opening it, '[the petitioner] told [her] to go into the walk-in cooler. So [she] unlocked it and got in.' The walk-in refrigerator was ten feet away from the safe, and the petitioner ordered Smith into the refrigerator '[j]ust two [or] three minutes' after she first saw him. Once she was inside the refrigerator, the petitioner told her that 'he would let [her] know when he was finished' and when it was safe to come out. Approximately two minutes after entering the refrigerator, Smith heard the petitioner say something that she could not make out. '[She] then waited a few more minutes after that' before she peeked out of the refrigerator to see if the petitioner had left the restaurant. Seeing that the petitioner had left, she exited the refrigerator and ran to the nearby gas station for help.

"Finally, although the petitioner did not testify at [his criminal] trial, his statement to the police was read into the record and became a full exhibit. In that statement, he confessed to both robberies. With respect to the Manchester robbery involving Royer, his statement provided in relevant part: 'Once we were in the back room,

Bell *v.* Commissioner of Correction

[Royer] opened the safe. After she opened the safe, I asked her which one—which one is the walk-in refrigerator. She pointed to one, and I asked her to step in there for a minute and I'll come back and get you when I'm through. I then took the money out of the safe. . . . After I got the money, I left. The manager was still in the refrigerator when I left.' With respect to the Glastonbury robbery involving Smith, the petitioner's statement provided in relevant part: 'The only other robbery I did was the one in Glastonbury this morning, [April 14, 2001]. . . . I told [Smith] to open the safe. . . . After she opened the safe, I told her to get in the refrigerator. After I got the money from the safe, I left.' '' (Footnote omitted.) Id., 160–62.

The jury found the petitioner guilty of two counts of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B),[1] two counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), two counts of burglary in the third degree in violation of General Statutes § 53a-103 (a), and two counts of larceny in the third degree in violation of General Statutes (Rev. to 2001) § 53a-124 (a) (2). The trial court rendered judgment in accordance with the jury verdict and sentenced the petitioner to a total effective term of imprisonment of thirty-six years.

The Appellate Court rejected the petitioner's claims on direct appeal, and this court denied his petition for certification to appeal. See *State* v. *Bell*, 93 Conn. App. 650, 652, 891 A.2d 9, cert. denied, 277 Conn. 933, 896 A.2d 101 (2006). At no time on direct appeal did the petitioner challenge the propriety of the trial court's jury instructions on kidnapping.

---

[1] General Statutes § 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to . . . (B) accomplish or advance the commission of a felony . . . ."

Bell *v.* Commissioner of Correction

Subsequently, in 2008, "we decided *Salamon*, in which we reconsidered our long-standing interpretation of our kidnapping statutes, General Statutes §§ 53a-91 through 53a-94a. . . . [In that case] [t]he defendant [Scott Salamon] had assaulted the victim at a train station late at night . . . and ultimately was charged with kidnapping in the second degree in violation of [General Statutes] § 53a-94, unlawful restraint in the first degree, and risk of injury to a child. . . . At trial, [Salamon] requested a jury instruction that, if the jury found that the restraint had been incidental to the assault, then the jury must [find him not guilty] of the charge of kidnapping. . . . [Consistent with established precedent of this court] [t]he trial court declined to give that instruction [and Salamon was convicted of second degree kidnapping in addition to the two other crimes]. . . .

"[On appeal, Salamon requested that we reexamine] our long-standing interpretation of the kidnapping statutes to encompass even restraints that merely were incidental to and necessary for the commission of another substantive offense, such as robbery or sexual assault. . . . We [did so and] ultimately concluded that [o]ur legislature . . . intended to exclude from the scope of the more serious crime of kidnapping and its accompanying severe penalties those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against that victim. Stated otherwise, to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime. *State* v. *Salamon*, supra, 287 Conn. 542.

"We [further] explained in *Salamon* that a defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after

Bell *v.* Commissioner of Correction

the commission of that other crime, the victim is moved
or confined in a way that had independent criminal
significance, that is, the victim was restrained to an
extent exceeding that which was necessary to accom-
plish or complete the other crime. Whether the move-
ment or confinement of the victim is merely incidental
to and necessary for another crime will depend on the
particular facts and circumstances of each case. Conse-
quently, when the evidence reasonably supports a find-
ing that the restraint was not merely incidental to the
commission of some other, separate crime, the ultimate
factual determination must be made by the jury. For
purposes of making that determination, the jury should
be instructed to consider the various . . . factors [rele-
vant thereto] . . . . Id., 547–48.'' (Internal quotation
marks omitted.) *State* v. *Banks*, supra, 339 Conn. 11–12.
We identified those factors as including ''(1) the nature
and duration of the victim's movement or confinement,
(2) whether that movement or confinement occurred
during the commission of the separate offense, (3)
whether the restraint was inherent in the nature of the
separate offense, (4) whether the restraint prevented
the victim from summoning assistance, (5) whether the
restraint reduced the perpetrator's risk of detection,
and (6) whether the restraint created a significant dan-
ger or increased the victim's risk of harm independent
of that posed by the separate offense.'' Id., 42.

Three years later, in *Luurtsema* v. *Commissioner of
Correction*, 299 Conn. 740, 12 A.3d 817 (2011), we held
that *Salamon* applies retroactively in habeas actions.
Id., 751 (plurality opinion). Soon thereafter, in 2012, the
petitioner filed the habeas petition that is the basis
for this appeal. In his amended petition, the petitioner
alleged, among other things, a violation of his due pro-
cess right to a fair trial under the federal and state
constitutions, challenging his kidnapping convictions

Bell *v.* Commissioner of Correction

on the ground that the instructions given to the jury were not in accordance with *Salamon*.[2]

The habeas court denied the petition. That court concluded that the respondent, the Commissioner of Correction, had demonstrated that the absence of a *Salamon* instruction at the petitioner's criminal trial was harmless error. Specifically, the habeas court was of the view that, although forcing the victims to enter the walk-in refrigerators did not create a significant danger or increased risk of harm independent of that posed by the robberies, such conduct was not inherent in the robberies themselves but, rather, helped prevent the victims from summoning assistance, thereby reducing the risk of the petitioner's being detected.

The habeas court granted the petitioner's certification to appeal, and the Appellate Court, with one judge dissenting, reversed the habeas court's judgment. *Bell* v. *Commissioner of Correction*, supra, 184 Conn. App. 173; see also id., 174 (*Lavine, J.*, dissenting). The Appellate Court applied the harmless error standard adopted in *Neder* v. *United States*, supra, 527 U.S. 18; *Bell* v. *Commissioner of Correction*, supra, 158 n.6; and determined that the absence of a *Salamon* instruction was not harmless beyond a reasonable doubt. Id., 153, 159. Specifically, the Appellate Court, applying the six factor test that we set forth in *Salamon* and relying on its analysis and conclusion in *Banks* v. *Commissioner of Correction*, 184 Conn. App. 101, 194 A.3d 780 (2018), rev'd, 339 Conn. 1, A.3d (2021); see *Bell* v. *Commissioner of Correction*, supra, 153, 166–72; held that "[t]he significance of the *Salamon* factors that do weigh in favor of the petitioner, namely, the nature and duration of the movement and confinement of the

[2] Although the petition did not frame the claim in these terms, the habeas court construed the petition as raising a *Salamon* claim, and the petitioner does not contend that that reading of the petition was improper. *Bell* v. *Commissioner of Correction*, supra, 184 Conn. App. 155 n.3.

Bell *v.* Commissioner of Correction

employees, whether such confinement occurred during the commission of the robbery and whether the restraint was inherent in the nature of the robbery, outweighs the significance of those that support the respondent's claim of harmless error.'' (Internal quotation marks omitted.) *Bell* v. *Commissioner of Correction*, supra, 171. In a dissenting opinion, Judge Lavine reached a different conclusion, explaining that, in his view, ''[c]onsidering all the facts and circumstances . . . no reasonable fact finder, even if properly instructed in accordance with *Salamon*, could find that the restraint of Royer and Smith was merely incidental to or a necessary part of either robbery.'' Id., 186–87 (*Lavine, J.*, dissenting). We granted the respondent's petition for certification, limited to the following issue: ''Did the Appellate Court properly conclude that the absence of an instruction in accordance with . . . *Salamon* . . . at the petitioner's criminal trial was not harmless error?'' *Bell* v. *Commissioner of Correction*, 330 Conn. 949, 197 A.3d 390 (2018).

II

We turn now to the dispositive question posed by this appeal, namely, whether, under the legal framework that we adopted in *Banks*, the omission of a *Salamon* instruction at the petitioner's criminal trial constituted harmful error requiring a new trial on the kidnapping counts. Although a familiarity with *Banks* is presumed, we briefly review the facts and holdings of that case.

A

In *Banks*, the petitioner, Mark Banks, also was convicted of multiple counts of kidnapping in the first degree in violation of § 53a-92 (a) (2) (B), in connection with the robberies of two commercial establishments— in that case, retail mattress stores. *Banks* v. *Commissioner of Correction*, supra, 339 Conn. 5, 10. The undis-

Bell *v.* Commissioner of Correction

puted testimony was that Banks held his victims at gunpoint, forced them to give him cash from the store registers, led them a short distance to the store restrooms, and forced them to remain therein, on threat of death, while he escaped the premises. Id., 5–9. As in the present case, the primary defense at trial was that the state had misidentified the perpetrator. Id., 9. The habeas court concluded that, although the jury should have been instructed in accordance with *Salamon*, the lack of a *Salamon* instruction was harmless error because the conduct that gave rise to the kidnapping convictions had taken place after Banks forcibly took property in the victims' possession and, therefore, necessarily bore independent criminal significance. See id., 13.

In reversing the judgment of the Appellate Court, which had reversed the judgment of the habeas court denying Banks' habeas petition, we held, first, that, on collateral review, the harmlessness of a trial court's failure to properly instruct a jury in accordance with *Salamon* is to be assessed in accordance with *Brecht*, which sets forth the standard generally used in federal habeas actions for determining the harmlessness of constitutional errors, and not the more petitioner friendly test of *Neder*, ordinarily applicable to claims of constitutional magnitude raised on direct, federal appeal. Id., 15, 19. Under *Brecht*, the harmlessness of constitutional errors in a federal habeas action is assessed according to "whether the . . . error had [a] substantial and injurious effect or influence in determining the jury's verdict." (Internal quotation marks omitted.) *Brecht* v. *Abrahamson*, supra, 507 U.S. 623. Thus, we explained in *Banks* that "[t]he *Brecht* standard reserves the remedy of a new trial for errors resulting in actual prejudice, as distinguished from errors giving rise to a mere possibility of harm. [Id.], 637." (Internal quotation marks omitted.) *Banks* v. *Commissioner of Correction*, supra,

339 Conn. 16. As we further explained in *Banks*, however, "the *Brecht* test affords a habeas petitioner significant protection." Id., 24. "We previously have likened the substantial prejudice necessary for relief from nonconstitutional error to error that is sufficiently prejudicial to undermine confidence in the fairness of the verdict. . . . *State* v. *Sawyer*, [279 Conn. 331, 353, 904 A.2d 101 (2006), overruled on other grounds by *State* v. *DeJesus*, 288 Conn. 418, 953 A.2d 45 (2008)]; see also (*State* v. *Sawyer*) supra, 352–54 (citing cases in which this court has applied undermine confidence test for purposes of determining harmfulness of nonconstitutional error). Notably, this is the same showing—characterized as a showing of a reasonable probability of a different result—required for constitutional claims alleging ineffective assistance of counsel under *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and the suppression of material, exculpatory evidence under *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The United States Court of Appeals for the Second Circuit has explained that, when *Brecht* is applied to a trial error in which the jury is not properly instructed as to an essential element of the charged crime, the reviewing court must undertake a careful, de novo review of the entire record and order a new trial unless the court is persuaded that a properly instructed, rational jury would have found the [required element of the crime proven] beyond a reasonable doubt. *Peck* v. *United States*, 106 F.3d 450, 456–57 (2d Cir. 1997)." (Internal quotation marks omitted.) *Banks* v. *Commissioner of Correction*, supra, 16.

Moreover, "[a]lthough some courts expressly place the burden of demonstrating harmlessness under *Brecht* on the state, the United States Supreme Court has expressed the view that it is conceptually clearer simply to place the onus on the reviewing court to determine whether

Bell *v.* Commissioner of Correction

an error substantially influenced the jury's decision. See *O'Neal* v. *McAninch*, 513 U.S. 432, 436, 115 S. Ct. 992, 130 L. Ed. 2d 947 (1995); see id., 436–37. We agree with the high court, however, that, when the reviewing court is in equipoise as to the question, the error must be deemed to have affected the verdict. See id., 435. For all intents and purposes, then, once a petitioner has established a *Salamon* violation, the respondent bears the burden of demonstrating that the failure to instruct the jury in accordance with *Salamon* was harmless.'' (Internal quotation marks omitted.) *Banks* v. *Commissioner of Correction*, supra, 339 Conn. 17.

Second, we held in *Banks* that, when it is clear that a perpetrator forcibly moved and restrained his victims *after* having taken their property, for the apparent purpose of escaping undetected and unhindered from the scene of the robbery, a reviewing court typically may conclude as a matter of law that such conduct bears independent criminal significance and is not merely incidental to the underlying robbery.[3] See id., 44–45. Under such circumstances, a habeas court reasonably may conclude that the failure to instruct a jury in accordance with *Salamon* was harmless error. See id. *Banks* itself was such a case.

B

Although the facts of the present case are, in many respects, strikingly similar to those of *Banks*, upon a careful, de novo review of the entire record, we conclude that a few key dissimilarities dictate a different result. Unlike in *Banks*, the jury in the present case reasonably could have found that the petitioner forced

_____

[3] We noted, however, that the failure to submit the question to a properly instructed jury could constitute reversible error when, for example, the alleged postrobbery conduct involved no asportation and only minimal restraint. See *Banks* v. *Commissioner of Correction*, supra, 339 Conn. 49–50 n.14.

Bell *v.* Commissioner of Correction

Royer and Smith into the walk-in refrigerators not to facilitate his postrobbery escape but, rather, to incapacitate them while he completed the robberies. The petitioner informed the police that he took the money from each safe while the victims were restrained in the refrigerators. Smith seemed to confirm that account of events, indicating that the petitioner ordered her into the refrigerator immediately after she had opened the safe, and that he stated that he would release her " 'when he was finished,' " presumably meaning after he was finished emptying the safe. Although Royer testified that the petitioner had ordered her into the refrigerator after he finished looting the Manchester safe, she did not directly witness him taking the contents of the safe, and the jury might well have credited his statement that, consistent with his modus operandi in the Glastonbury robbery, he waited to empty the safe until Royer was incapacitated so he could do so unobstructed. At the very least, defense counsel should have had the opportunity to make such an argument.

We note in this regard that, whereas Banks displayed an actual firearm during his robberies, the petitioner appears to have merely positioned a wooden coat hanger under his jacket to represent that he was brandishing a firearm. If that were the case, then, presumably, he could not have used both hands to empty the store safes in view of the victims without dispelling the illusion that he was armed. In that sense, secreting the victims while he emptied the safes may have been instrumental to his successful completion of the robberies. Certainly, the jury reasonably could have so found.

If a victim is restrained in the midst of a robbery, rather than after the victim's property has been taken, then it rarely will be possible to say, as a matter of law, that the restraint bore independent criminal significance and was not merely incidental to the completion of the underlying crime. That determination will hinge

Bell *v.* Commissioner of Correction

on heavily fact based considerations, such as the distance of the asportation, the duration and degree of the restraints, the perpetrator's apparent motives for restricting the victim's movements, and the additional risks to which the victim was subjected. Under these circumstances, it also is easier to envision how defense counsel, if he or she had the benefit of *Salamon*'s guidance, might have argued the case and examined the state's witnesses differently. In the present case, given the relatively limited nature and scope of the petitioner's asportation and restraint of the victims, and the ambiguity surrounding why he chose to confine his victims during the robberies, we are not prepared to say that the omission of a *Salamon* instruction was harmless.

The judgment of the Appellate Court is affirmed.

In this opinion ROBINSON, C. J., and KAHN and VERTEFEUILLE, Js., concurred.

D'AURIA, J., concurring. I concur in the result because I agree with the majority that the lack of an instruction pursuant to *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008), was not harmless. As in my concurrence in the companion case we also decided today; see *Banks* v. *Commissioner of Correction*, 339 Conn. 1, 56, A.3d (2021) (*D'Auria, J.*, concurring); which I hereby incorporate by reference, however, I do not agree with the standard that the majority adopts for determining harmless error. The majority determines that, when a petitioner seeking habeas relief establishes a *Salamon* error, the habeas court must assess the harm of that error according to the legal standard that the United States Supreme Court articulated in *Brecht* v. *Abrahamson*, 507 U.S. 619, 623, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993) (new trial mandated if instructional error "had [a] substantial and injurious effect or influ-

Bell *v.* Commissioner of Correction

ence in determining the jury's verdict'' (internal quotation marks omitted)), rather than the more petitioner friendly standard that the high court adopted in *Neder* v. *United States*, 527 U.S. 1, 18, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (new trial required if it is ''clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the [instructional] error''). As I discussed in detail in my concurrence in *Banks*, I take issue with the majority's holding for two reasons. First, because I believe that the merits of this case would be the same under either standard,[1] I do not believe that this court needs to—or should—determine which standard applies, especially as it is unclear how many, if any, future cases this standard will apply to. Second, I believe that the *Neder* standard is the proper standard. Accordingly, I respectfully concur.

ECKER, J., concurring in the judgment. I respectfully disagree with the majority opinion to the extent that it adopts and applies the harmless error standard set forth in *Brecht* v. *Abrahamson*, 507 U.S. 619, 623, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993). See id. (new trial is mandated if instructional error ''had substantial and injurious effect or influence in determining the jury's verdict'' (internal quotation marks omitted)). For the reasons explained in part II of Justice D'Auria's concurring opinion in *Banks* v. *Commissioner of Correction*, 339 Conn. 1, 56, A.3d (2021) (*D'Auria, J.*, concurring), I would instead apply the standard articulated in *Neder* v. *United States*, 527 U.S. 1, 18, 119 S. Ct. 1827,

---

[1] Assuming that the majority is correct that the *Brecht* standard is the proper standard, I agree with the majority that the petitioner would prevail on his *Salamon* claim. Additionally, assuming that I am correct that the *Neder* standard is the proper standard, I agree fully with the Appellate Court majority's thorough and well reasoned opinion that the absence of a *Salamon* instruction was not harmless beyond a reasonable doubt under the *Neder* standard. See *Bell* v. *Commissioner of Correction*, 184 Conn. App. 150, 158 n.6, 172, 194 A.3d 809 (2018), aff'd, 339 Conn. 79, A.3d (2021).

144 L. Ed. 2d 35 (1999), which requires a new trial unless it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the [instructional] error," as I explained in my separate concurring opinion in *Banks* v. *Commissioner of Correction*, supra, 79 (*Ecker*, *J.*, concurring in the judgment and joining part II of Justice D'Auria's concurring opinion in that case). I nevertheless concur in the judgment in this case because I agree with the majority that the failure to give a jury instruction, as required by *State* v. *Salamon*, 287 Conn. 509, 550, 949 A.2d 1092 (2008), was not harmless on this record.

———————————